## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DANA CALICCHIO,**        :
                     :
       **Plaintiff,**        :
                     :      **CIVIL ACTION FILE NO.**
**v.**                           :      **1:17-cv-01667-AJB**
                     :
**COMMISSIONER, SOCIAL**    :
**SECURITY ADMINISTRATION,** :
                     :
       **Defendant.**        :

## O R D E R  A N D  O P I N I O N[1]

Plaintiff Dana Calicchio ("Plaintiff") brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB")

---

[1] The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entry dated 5/9/2017 & 5/16/2017). Therefore, this Order constitutes a final Order of the Court.

under the Social Security Act.[2]  For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 3, 2013, alleging disability commencing on September 21, 2011.  [Record (hereinafter "R") 84-85].  Plaintiff's applications were denied initially and on reconsideration.  [*See* R84-109].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R119-20].  An evidentiary hearing was held on December 1, 2015, wherein Plaintiff amended her alleged onset date to her fifty-fifth birthday, March 25, 2013.  [R39-83, 575-622].  The ALJ issued a decision on January 19, 2016, denying Plaintiff's application on the

---

[2]      Title II of the Social Security Act provides for DIB.  42 U.S.C. § 401 *et seq*.  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits for the disabled ("SSI").  SSI claims are not tied to the attainment of a particular period of insurance eligibility.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).  Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

AO 72A
(Rev.8/8
2)

ground that she had not been under a "disability" at any time from the amended alleged onset date through March 31, 2014, the date last insured. [R16-34]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on March 27, 2017, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed an action in this Court on May 9, 2017, seeking review of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on August 21, 2017. [Docs. 5, 6]. On September 27, 2017, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 10]; on November 22, 2017, the Commissioner filed a response brief in support of the decision and a supplemental transcript,[3] [Docs. 13, 14-1]; and on December 5, 2017, Plaintiff filed a reply brief in support of her petition for review, [Doc. 15]. The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).[4]

---

[3]     Plaintiff did not oppose the Commissioner's motion to supplement the record or seek leave to amend her opening brief. (*See* Dkt.).

[4]     Neither party requested oral argument. (*See* Dkt.).

AO 72A
(Rev.8/8
2)

## II.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits.  *See* 20 C.F.R. § 404.1512(a).  The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability.  *See* 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant must prove at step

4

one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. § 404.1520(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

5

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## III.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the

AO 72A
(Rev.8/8
2)

Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal

AO 72A
(Rev.8/8
2)

principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11ᵗʰ Cir. 1995); *Walker*,

826 F.2d at 999.

## IV.    PLAINTIFF'S CONTENTIONS

As set forth in Plaintiff's brief, the issues to be decided are as follows:

1.    Whether the ALJ properly concluded that Plaintiff could perform her past relevant work.

2.    Whether the ALJ correctly applied Social Security Ruling ("SSR") 82-41 when analyzing the transferability of skills.

3.    Whether the ALJ's errors were harmful.

[Doc. 10 at 1].[5]

---

[5]    In her reply brief, Plaintiff also argues for the first time that the ALJ did not properly evaluate her subjective complaints of pain. [Doc. 15 at 1-4]. Although she cites evidence appearing in the supplemental transcript, review of the record reveals that the cited evidence also appears in the original transcript. [*See id.* (citing [R595 & 601], which also appear at [R61, 67], respectively)]. A party may not raise an argument for the first time in a reply brief. *Freeman v. Barnhart*, 220 Fed. Appx. 957, 961 n.1 (11ᵗʰ Cir. Mar. 23, 2007) (per curiam) ("Arguments raised for the first time in a reply brief are not properly before this court, and we will not consider them.") (citing *Hall v. Coram Healthcare Corp.*, 157 F.3d 1286, 1290 (11ᵗʰ Cir. 1998)); *Newsome ex rel. Bell v. Barnhart*, 444 F. Supp. 2d 1195, 1203 n.7 (M.D. Ala. 2006) ("The court declines to consider this new argument, to which the Commissioner did not have an opportunity to respond. . . . Issues raised in a reply brief are not properly before the court where they could and should have been presented previously . . . ."). The Court therefore finds the issue waived and shall limit its review of the decision of the Commissioner to the allegations of error set forth in Plaintiff's opening brief.

AO 72A
(Rev.8/8
2)

## V. STATEMENT OF FACTS[6]

### A. *Background*

Plaintiff was fifty-six years old on the date last insured and was fifty-seven years old on the date of the decision. [R34, 178, 205]. She has a high-school education. [R45, 221]. Plaintiff alleges disability due to degenerative disc disease in her back and neck, multiple herniated discs, and status post cervical discectomy and fusion. [Doc. 10 at 2; *see also* R62, 220].

### B. *Lay Testimony*

Plaintiff testified that she last worked in September 2011. [R45]. She had worked as a sales associate for Time Warner Cable from 2009 to 2011, where she worked in the cable store, taking orders, receiving returned equipment from customers, and stocking equipment. [R46-47, 245-46, 298, 581-83]. She stated that the job required regular heavy lifting of boxes that weighed up to seventy-five pounds and that she walked or stood for approximately eight hours each day. [R46-47, 246].

---

[6] In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal. [*See* Docs. 10, 13, 15; *see also* Doc. 8 at 3 ("The issues before the Court are limited to the issues properly raised in the briefs.")].

9

Plaintiff worked part-time for Williams Sonoma from 2007 to 2010. [R48, 245, 298, 583]. She described it as a sales job and stated that she would teach cooking and demonstrate products. [R247, 298].

Prior to Williams Sonoma, Plaintiff worked part-time at Staples. [R48, 245, 583]. In 2007, before she began working at Staples, she worked for three to four months as the director of a preschool. [R49, 245, 298, 584-85].

From 2000 to 2004, Plaintiff worked at Wyland Worldwide, where her primary duties were customer service and sales. [R50, 249, 298, 584-86]. She worked art gallery shows and was responsible for sales, delivering art to collectors, purchasing, keeping inventory, and working with the artist and manufacturers. [R50, 245, 249, 298, 586]. She also entered orders, answered questions, set up meetings between customers and the artist, handled payments, and worked with distributors to ensure shipments were loaded properly. [R51, 586].

Plaintiff stated that she worked at Valve and Primer full-time starting in or around 2000. [R52, 245, 587]. She worked as assistant to the CEO, helping with workmen's compensation insurance, working with the factory and shipments, and doing whatever the CEO wanted her to do. [R52, 587].

10

She reported that from 1999 to 2000, she worked for R&D Fabricators, where she ordered materials and managed the receipt of materials and delivery of products. [R53, 245, 587-88]. The job required lifting or carrying up to about fifty pounds. [R53, 588].

From 1998 to 1999, Plaintiff managed the customer call center for Metalsoft, Inc. [R54, 245, 589]. She described her job as a "Customer Service Manager," and stated that she "supervised and managed [the] call center" and was responsible for making sure customer calls were answered properly and the customers were taken care of. [R54, 251, 589]. She also worked closely with computer installers, making sure that everything was running properly. [R54, 589]. She also reported that the job required her to lift twenty-five pounds frequently and to walk and stand for eight hours each day. [R251].

C.    *Medical Records*

Plaintiff presented for an initial evaluation for physical therapy for back pain on October 5, 2011. [R408]. Her initial status was unable to work secondary to dysfunction, but she was assessed as having good potential for overall rehabilitation. [R408, 410, 412].

11

Plaintiff returned for physical therapy on October 10, 2011. [R416]. Plaintiff reported that she was walking somewhat better but continued to have pain in her low back and had increased pain with prolonged walking, standing, and sitting. [R416]. The therapist noted that Plaintiff's "standing posture is significant for mild forward head and internally rotated shoulder posture"; her "lumbar spine is slightly flattened and client demonstrates decreased weight bearing on the right lower extremity"; and Plaintiff's left and right thoracolumbar planes were 2/5 strength bilaterally. [R416].

At physical therapy sessions taking place on October 12, 2011, and October 17, 2011, Plaintiff complained of increased pain with prolonged walking. [R418, 420].

Plaintiff had an MRI of her lumbosacral spine at Atlantic Orthopaedics on October 18, 2011. [R372, 392]. The MRI revealed multi-level degenerative disc disease, most severe at L5-S1; minimal-to-mild disc bulges; and no spinal canal or neural foraminal stenosis. [R372, 392].

Plaintiff was discharged from physical therapy on December 2, 2011, under the direction of her physician following her MRI. [R423]. It was noted that Plaintiff had tolerated that day's treatment with minimal complaints of pain and that based on her clinical presentation, her prognosis was good. [R423].

12

Plaintiff presented to OrthoWilmington on December 14, 2011, with complaints of continued back pain with radiation to her legs. [R367]. She received bilateral transforaminal epidural steroid injections at L5-S1. [R367].

Plaintiff was seen at OrthoWilmington on December 28, 2011. [R518]. She reported that she initially injured her back on September 21, 2011, after lifting something. [R518]. She rated her pain at nine on a ten-point scale, with an average pain score over the past week of ten on a ten-point scale. [R518]. Examination of Plaintiff's back revealed diffuse thoracic and lumbar tenderness to palpation; decreased lumbar range of motion in flexion and extension; hyperreflexic bilateral patellar and Achilles; good and equal strength in the bilateral lower extremities; and no lower-extremity edema. [R518]. X-rays taken that day showed degenerative disc disease in the thoracic spine. [R519].

An MRI of the thoracic spine taken on January 13, 2012, showed spondylosis changes of T1-T2 with spur disc tissue and small protruding disc that was abutting the anterior dura, compressing the dura and mildly abutting and compressing the anterior spinal cord region; evidence of previous cervical spine surgery extending down to C7 with an anterior fusion; and endplate changes of T7-T8 and T8-T9 consistent with disc degeneration. [R363, 390].

13

Plaintiff returned to Atlantic Orthopedics on January 26, 2012, with complaints of pain she rated at ten on a ten-point scale, with an average pain score over the past week of ten on a ten-point scale. [R524]. Examination showed tenderness to palpation and decreased lumbar range of motion, but she still had good and equal muscle strength in her lower extremities. [R524]. The physician recommended physical therapy. [R524].

Plaintiff returned to Atlantic Orthopedics on May 30, 2012, with complaints of neck pain with radiation into the right arm; back pain with radiation into her legs; continued thoracic strain; and poor sitting and standing tolerance. [R539]. She rated her pain at nine on a ten-point scale, with an average over a seven-day period of seven to eight on a ten-point scale. [R539]. The physician found that Plaintiff had degenerative disc disease, disc herniation, and chronic pain and opined that Plaintiff could perform sedentary work and that other than core-strengthening exercises, no additional treatment would help. [R539-40].

On July 16, 2012, Plaintiff saw Robert Lacin, M.D., of Raleigh Neurosurgical Clinic Inc., for a neurological second opinion. [R386]. Dr. Lacin opined that the MRIs were "essentially normal" for Plaintiff's age and did not show any significant pathology causing spinal-cord compression or instability. [R387]. He also found that Plaintiff

14

had an "unusual constellation of symptoms" that objective data did not explain, and he could not think of a single diagnosis to explain her symptoms. [R387]. He noted that Plaintiff's symptoms were very unusual in the sense that they included symptoms that could be consistent with spinal-cord compression, but that since spinal-cord compression does not cause pain of the nature that she was experiencing, there could be a musculoskeletal component to the pain as well. [R387]. He also opined that, in absence of an objective traumatic finding, he believed that Plaintiff's prognosis was "pretty good." [R387].

A note from OrthoWilmington dated August 6, 2012, stated that Plaintiff was restricted to sedentary duty until her next visit. [R543].

Plaintiff returned to OrthoWilmington on September 10, 2012, complaining of back and shoulder pain and intermittent radiating pain into her legs. [R356]. She rated the pain at eight on a ten-point scale. [R356]. The physician found that Plaintiff

15

exhibited positive Hoffmann's signs,[7] which suggested myelopathy[8] affecting the cervical spine, and that she had "brisk deep tendon reflexes of her upper extremities as well as lower extremities," which also suggested myelopathy of the cervical spine. [R356-57].

On September 4, 2012, Gary L. Smoot, M.D., examined Plaintiff to provide another opinion. [R546-49]. Dr. Smoot observed that Plaintiff had moderate active spinal range of motion with pain on palpation, was in no acute distress, and did not appear to be experiencing 10/10 pain as alleged. [R548]. Her sensation was intact, she had full strength in all major muscle groups, and a sitting straight-leg raise test was negative. [R548]. Dr. Smoot diagnosed chronic back pain without significant objective findings. [R548].

---

[7]     A positive Hoffmann's sign may indicate damage above the C5 or C6 level of the cervical spine and is often associated with noticeable weakening of the grip in the hands. HealthCentral, MS Signs v. Symptoms: What is the Hoffmann Reflex?, http://www.healthcentral.com/multiple-sclerosis/c/19065/129802/reflex/ (last visited 8/24/18).

[8]     Myelopathy describes any neurologic deficit related to the spinal cord, usually due to compression of the spinal cord by disk material in the cervical spine. D.J. Seidenwurm, *Am. J. of Neuroradiology*, May 2008, 29 (5) 1032-34, *available at* http://www.ajnr.org/content/29/5/1032 (last visited 8/24/2018).

AO 72A
(Rev.8/8
2)

Plaintiff returned to OrthoWilmington on September 10, 2012, with complaints of back and shoulder pain with some intermittent radiating pain into her legs. [R355]. She rated her pain at eight on a ten-point scale. [R355]. The physician recommended that Plaintiff continue to exercise and strengthen her core lumbar musculature, lose as much weight as possible in a safe fashion, and undergo a functional capacity evaluation ("FCE"). [R356]. She also stated that Plaintiff's work status would continue to be sedentary. [R356].

On September 28, 2012, Plaintiff underwent an FCE with Alex S. Arab, P.T. [R551-66]. Mr. Arab opined that while several discrete tests of Plaintiff's efforts yielded valid test results, [R557], many of Plaintiff's movement patterns and behaviors were not consistent with her symptoms, she exhibited true symptom exaggeration, and the overall results were invalid, [R563-64, 566]. He also concluded that the combination of symptom exaggeration, non-organic signs, and sub-maximal effort represented a voluntary effort to demonstrate a greater level of disability than was actually present. [R551]. He found, however, that even the sub-maximal results indicated that Plaintiff had the ability to perform modified light work. [R551-52].

Plaintiff returned to OrthoWilmington on October 2, 2012, with complaints of severe back pain. [R352]. On examination, it was noted that Plaintiff's lumbar range

17

of motion was limited; she had severe muscular spasm of the lumbar spine, worse on the right than left; she was positive for a Hoffmann's sign; and she had an antalgic[9] gait. [R352]. The physician diagnosed lumbar muscular strain, lumbar facet arthropathy,[10] previous anterior cervical disc fusion, and spinal myelopathy. [R352]. She also opined that Plaintiff's lumbar spine condition was significant, that Plaintiff had severe muscle spasms, and that her function had declined; prescribed diazepam[11] to help treat the lumbar spasm; stated that once the lumbar spasm improved, she intended to recommend lumbar facet-joint blocks secondary to a diagnosis of lumbar facet arthropathy; and stated that should the lumbar facet blocks be successful, but short lived in efficacy, she would then recommend radio-frequency femoral coagulation. [R352]. The physician

_____

[9]  An antalgic gait is a limp adopted so as to avoid bearing weight on the injured side of the body, thereby reducing pain. The Free Online Medical Dictionary, Antalgic Gait, http://medical-dictionary.thefreedictionary.com/antalgic+gait (last visited 8/24/18).

[10]  Arthrosis is another name for osteoarthritis, the most common type of arthritis. It is caused by normal wear and tear on the joints and cartilage; eventually, the cartilage may disappear completely, leaving joints with bone-to-bone contact. Healthline, *Arthrosis vs. Arthritis: What's the Difference?*, http://www.healthline.com/health/arthrosis-vs-arthritis#Overview1 (last visited 8/24/18).

[11]  Diazepam, also known by the brand name Valium, is typically used to relieve anxiety, muscle spasms, and seizures. MedlinePlus, Diazepam, https://medlineplus.gov/druginfo/meds/a682047.html (last visited 8/24/18).

AO 72A
(Rev.8/8
2)

further stated that other than strength training and proper ergonomics, there was nothing else that could or should be done for Plaintiff's low back and that Plaintiff was to remain out of work for approximately one month. [R352].

On January 7, 2013, Plaintiff presented to Dr. Wendy Gray at The Kaufmann Clinic for primary-care treatment for anxiety and her lower-back pain. [R426]. Dr. Gray prescribed Xanax[12] and narcotic therapy and referred Plaintiff for pain management and orthopedic surgery evaluations for her back pain. [R427-28].

On September 18, 2013, Warner Wood, M.D., performed a one-time consultative physical examination. [R320-27]. On examination, Dr. Wood noted reduced range of motion in the neck with professed tenderness; normal upper-extremity reflexes; normal grip, pinch, push, and pull; full range of motion with no tenderness in the shoulders, elbows, wrists, and hands; ability to sit and stand with a normal posture and walk without a limp; limited range of motion of the lower back with pain; positive straight-leg raises in the supine position, but negative straight-leg raising when seated; full range of motion in the hips, knees, ankles, and feet; and full motor strength in the arms and legs. [R321-22, 326]. He also noted that Plaintiff's MRI revealed multi-level

_____

[12]     Xanax (alprazolam) is a benzodiazepine typically used to treat anxiety disorders and panic disorder. Medline Plus, Alprazolam, https://medlineplus.gov/druginfo/meds/a684001.html (last visited 8/24/18).

AO 72A
(Rev.8/8
2)

degenerative disc disease, mild at C3-4 and mild-to-moderate at L5-S1, and postoperative anterior interbody fusion, C4-7, with anterior plate and screws. [R322-23]. Dr. Wood opined that Plaintiff should be able to perform sedentary work. [R323].

### D.    Vocational-Expert Testimony

The vocational expert ("VE") testified that Plaintiff's position at the art company was a customer-service representative, Dictionary of Occupational Titles ("DOT") § 277.457-010, and was light work. [R74, 607]. The VE classified Plaintiff's job at the cable store as retail sales, DOT § 290.477-014, which was light work, but she testified that Plaintiff performed it at the very heavy level. [R74-75, 608]. Several of Plaintiff's other positions were classified as office clerk, DOT § 239.567-010, which was light work but was performed by Plaintiff as light-to-medium work. [R75, 608]. Finally, the VE classified Plaintiff's position at the call center as call-center supervisor, DOT § 241.137-014, which is sedentary work. [R75, 609].

When asked about the working capability of a person of Plaintiff's age, education, and work experience, who is able to perform sedentary work, but could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl, and must avoid all exposure to unprotected

AO 72A
(Rev.8/8
2)

heights and all use of moving machinery, the VE testified that the person could perform Plaintiff's past relevant work as a call-center supervisor both generally and as performed. [R78, R611]. The VE further testified that a hypothetical person of Plaintiff's age, education, experience, and RFC could also perform other sedentary jobs such as order clerk, DOT § 209.567-014; charge account clerk, DOT § 205.367-010; and surveillance monitor, DOT § 379.367-010. [R79, 612].

The VE testified that Plaintiff's past relevant work had produced the transferrable skills of customer service skills, computer skills, supervisory skills, and sales skills and that all of the skills would transfer within the sedentary hypothetical the ALJ had provided earlier. [R616-17]. The VE additionally testified that if the call-center-supervisor position was not considered past relevant work, Plaintiff would still have the transferrable skills of customer service and sales skills for her other jobs, and those two skills would also transfer to the sedentary hypothetical the ALJ had provided. [R617-18]. The VE also testified that, in addition to the three earlier jobs, a hypothetical individual with those transferable skills could perform the jobs of telephone solicitor, DOT § 299.357-014, and customer service representative, DOT § 239.362-014. [R618-19]. The VE confirmed that these occupations required

21

no additional skills and an individual would need to make very little, if any, vocational adjustment for those jobs to be viable.  [R619].

## VI.   ALJ'S FINDINGS

The ALJ made the following findings of fact and conclusions of law:

1.      The claimant last met the insured status requirements of the Social Security Act on March 31, 2014.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 25, 2013 through her date last insured of March 31, 2014 (20 CFR 404.1571 *et seq.*).

. . .

3.      Through the date last insured, the claimant had the following severe impairments: cervical, thoracic, and lumbar degenerative disc disease, status post cervical discectomy and fusion; obesity (20 CFR 404.1520(c)).

. . .

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity [("RFC")] to perform sedentary work as defined in

22

20 CFR 404.1567(a) except that she could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop, crouch, kneel, or crawl. She needed to avoid all exposure to unprotected heights and all use of moving machinery.

. . .

6.      Through the date last insured, the claimant was capable of performing past relevant work as a call center supervisor (DOT Code # 241.137-014). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

. . .

7.      The claimant was born on March 25, 1958 and was 56 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

. . .

10.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)). . . .

AO 72A
(Rev.8/8
2)

11.     The claimant was not under a disability, as defined in the Social
        Security Act, at any time from March 25, 2013, the alleged onset
        date, through March 31, 2014, the date last insured
        (20 CFR 404.1520(g)).

[R18-33].

The ALJ explained that Plaintiff's past work as a call-center supervisor qualified

as "past relevant work" because she had worked in the position long enough to learn

the job and had performed it within the fifteen years preceding her date last insured.

[R31]. The ALJ also explained that, based on the testimony of the VE, he found that

Plaintiff was able to perform the work as a call-center supervisor both as she had

previously performed it and as described in the Dictionary of Occupational Titles.

[R31].

The ALJ further explained that, based on the testimony of the VE, he found that

Plaintiff had additional past relevant work as a customer-service representative, a job

that he found "would certainly involve continuity of 'skills, knowledge, and work

processes' of [Plaintiff's] job as a call center supervisor," [R31], as well as past relevant

work as a retail sales clerk and office clerk, [R32], all of which met the recency,

durational, and earnings requirements to be considered as past relevant work, [R32].

The ALJ also noted that the VE had testified that Plaintiff's transferable skills from the

24

call-center supervisor position included customer-service skills, supervisory skills, computer skills, and sales skills, which would have enabled her to work as a customer-service representative, [R32-33]; that her transferable skills from the customer-service-representative and office-clerk positions included customer-service and sales skills, which would have enabled her to work as a telephone solicitor or customer-service representative, [R32-33]; and that the VE had testified that Plaintiff's RFC would not preclude her from being able to perform the work of a telephone solicitor or a customer-service representative, [R33].

## VII.   CLAIMS OF ERROR

Plaintiff contends that it was error for the ALJ to conclude that Plaintiff could perform her past relevant work. [Doc. 10 at 6-11]. She argues first that it was error to consider her former position as a call-center supervisor because the call-center job was outside the relevant time period, [*id*. at 6-7]; second, she contends that the ALJ's finding that Plaintiff could perform her past work as a call-center supervisor as she actually performed it is not supported by substantial evidence, [*id*. at 7-9]; and third, she argues that substantial evidence did not support the residual functional capacity for sedentary work, [*id*. at 9-11]. Plaintiff further argues that the ALJ incorrectly applied SSR 82-41 when analyzing the transferability of skills because the VE did not testify

to the skills required of any of Plaintiff's past relevant work and Plaintiff's testimony regarding her job duties only tangentially involved sales experience. [*Id*. at 11-17]. Finally, Plaintiff argues that the ALJ's errors were harmful because but-for the errors, Plaintiff would have met Medical-Vocational Rule 201.6, which would have directed a "disabled" decision. [*Id*. at 17-19]. The Court will consider the arguments in their logical order.

A.    *Whether Substantial Evidence Supports the RFC for Sedentary Work*

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence. [Doc. 10 at 9-11]. Specifically, Plaintiff argues Mr. Arab concluded that "over several, independent validity tests of the plaintiff's efforts resulted in valid test results" and that the FCE Mr. Arab performed should have removed all doubts as to Plaintiff's efforts and should have resulted in additional limitations to sedentary exertion, [*id*. at 10-11], and she contends that objective evidence, such as Plaintiff's MRI revealing multi-level degenerative disc disease with multiple areas of disc-space narrowing and physicians' observations of decreased cervical range of motion and a painful supine straight-leg test, also supports additional functional limitations, [*id*. at 11].

26

AO 72A
(Rev.8/8
2)

The Court finds no basis for reversal in this allegation of error. It first bears remark that while Plaintiff points to evidence of impairment, she does not link any of that evidence to a functional limitation omitted from the RFC. [*See* Doc. 10 at 11]. Eleventh Circuit precedent establishes that the mere existence of an abnormality or diagnosis alone does not establish the degree to which the claimant is limited in her ability to work or undermine an ALJ's RFC determination. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam) (explaining that the existence of an impairment does not reveal the extent to which it limits the claimant's ability to work); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Thus, Plaintiff has provided no basis for a determination that either Mr. Arab's FCE or the objective evidence supported additional limitations.

It is also notable that Plaintiff's argument ignores most of Mr. Arab's report: Mr. Arab opined that Plaintiff's movement patterns and behaviors were not consistent with her symptoms, Plaintiff exhibited true symptom exaggeration, and the overall results were invalid, [R563-64, 566]; he concluded that the combination of symptom exaggeration, non-organic signs, and sub-maximal effort represented a voluntary effort

27

to demonstrate a greater level of disability than was actually present, [R551]; and he found that even the sub-maximal results indicated that Plaintiff had the ability to perform modified light work, [R551-52]. Thus, contrary to Plaintiff's representations, Mr. Arab specifically opined that Plaintiff exaggerated her symptoms, [R563-64, 566], and that Plaintiff was capable of at least a reduced range of light work, which is less restrictive than the ALJ's RFC finding,[13] [*compare* R21 *with* R551-52].

Additionally, Mr. Arab's report and other medical evidence in and around the relevant period supports the ALJ's RFC determination that Plaintiff was capable of performing sedentary work: the physician who treated Plaintiff at Atlantic Orthopedics on May 30, 2012, opined that although Plaintiff had degenerative disc disease, disc herniation, and chronic pain, and she complained of neck pain with radiation into the right arm, back pain with radiation into her legs, continued thoracic strain, and poor sitting and standing tolerance, she could perform sedentary work, [R539-40]; on July 16, 2012, Dr. Lacin opined that Plaintiff's MRIs were "essentially normal" for her age and did not show any significant pathology causing spinal cord compression or instability, that Plaintiff had an "unusual constellation of symptoms" that objective data

---

[13]    Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, and it may involve occasional walking and standing.  20 C.F.R. § 404.1567(a).

AO 72A
(Rev.8/8
2)

did not explain, that he could not think of a single diagnosis to explain her symptoms, and that, in absence of an objective traumatic finding, he believed that Plaintiff's prognosis was "pretty good," [R387]; a note from OrthoWilmington dated August 6, 2012, stated that Plaintiff was restricted to sedentary duty until her next visit, [R543]; on September 4, 2012, Dr. Smoot found that a sitting straight-leg raise test was negative; opined that Plaintiff had moderate active spinal range of motion with pain on palpation, intact sensation, and full strength in all major muscle groups, was in no acute distress, and did not appear to be experiencing 10/10 pain as alleged; and diagnosed chronic back pain without significant objective findings, [R546-49]; and on September 18, 2013, Dr. Wood found reduced range of motion in the neck with professed tenderness, limited range of motion of the lower back with pain, positive straight-leg raises in the supine position; also found normal upper-extremity reflexes, normal grip, pinch, push, and pull, full range of motion with no tenderness in the shoulders, elbows, wrists, and hands, ability to sit and stand with a normal posture and walk without a limp, negative straight-leg raising when seated, full range of motion in the hips, knees, ankles, and feet, and full motor strength in the arms and legs; noted that Plaintiff's MRI revealed multi-level degenerative disc disease, mild at C3-4 and mild-to-moderate at L5-S1, and postoperative anterior interbody fusion, C4-7, with anterior

AO 72A
(Rev.8/8
2)

plate and screws; and opined that Plaintiff should be able to perform sedentary work, [R320-27]. The ALJ considered all of these opinions, giving greatest weight to the opinion of Dr. Wood, [R23-29], and additionally explained how findings of exaggeration made not only by Mr. Arab, but also by Drs. Lacin and Smoot, undermined Plaintiff's credibility, [R25].

Based on this extensive and detailed discussion of the medical records, including the multiple findings of exaggerated symptoms, the undersigned finds that the ALJ supplied substantial evidence to support his RFC determination.

### B.   Relevance of the Call-Center Supervisor Position

Plaintiff points out that for a Title II case with the date last insured occurring prior to the date of adjudication, the relevant period for considering past work is the fifteen years prior to the date last insured; that Plaintiff's date last insured was March 31, 2014; and that Plaintiff's work history report indicates that she held the call-center supervisor position from February 1998 to April 1999. [Doc. 10 at 6-7 (citing POMS DI 25001.001B.65)]. She argues that the call-center job was therefore outside the relevant time frame and should not have been used as past relevant work. [Doc. 10 at 7]. Plaintiff additionally argues that the VE never testified as to the exertional capacity of Plaintiff's work as a call-center supervisor as she performed it

30

and that the record therefore does not contain substantial evidence to support the ALJ's finding that Plaintiff previously performed the call-center-supervisor work at the sedentary level. [*Id*. at 7-9].

The Court also finds no call for reversal in these arguments. Within the context of the Social Security regulations, past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b); *accord* 20 C.F.R. § 404.1565(a) (further explaining that the agency does not usually consider work the claimant did more than fifteen years before the date last insured because "[a] gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in the job done then continue to apply"); *Barnes*, 932 F.2d at 1358-59 (explaining that the fifteen-year limitation does not prohibit consideration of work outside the period but instead "merely creates a 'presumption of inapplicability' of skills and abilities acquired in work performed outside the fifteen year period"); SSR 82-62 (" 'We consider that your work experience applies [i.e., is relevant] when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity.' "). The claimant has the burden of showing that work experience is not past relevant work. *Barnes*, *id.*

31

Plaintiff concedes that she last met the disability insured status on March 31, 2014, [Doc. 10 at 6; Doc. 15 at 5], and that work performed on or after April 1, 1999, therefore would fall within the relevant fifteen-year period, [Doc. 15 at 5]. She also does not contest that she worked as a call-center supervisor for at least "a few days in April 1999." [*Id*. (citing [R245])]. As a consequence, the record in this case supports a finding that the call-center work occurred within the fifteen-year period and thus constitutes past relevant work.[14]

It does appear that the ALJ erred in his determination that Plaintiff performed her past work as a call-center supervisor at the sedentary level. [*See* Doc. 10 at 7-9]. While the Commissioner is correct that the ALJ relied on VE testimony stating that an individual capable of performing the limited range of sedentary work set forth in the RFC would be able to perform Plaintiff's past work as a call-center supervisor as she performed it, it does not appear that the VE testimony took into account Plaintiff's

---

[14]    The Court recognizes that Plaintiff argues that the past-relevant-work rule is unjust as applied to her in this case because it would be "unreasonable to think that because plaintiff worked for a few days in April 1999 that she retained the skills necessary to perform the same job nearly 15 years later." [Doc. 15 at 5-6]. Plaintiff does not, however, provide any authority for reversal on this basis, [*see id*.], and Eleventh Circuit authority in fact provides that work performed within the fifteen-year limitations period "automatically qualifies as past relevant work under the regulations." *Barnes*, 932 F.2d at 1359. The Court therefore finds that the allegation provides no grounds for reversal.

AO 72A
(Rev.8/8
2)

statement in her work history report that her work in that position involved frequently lifting twenty-five pounds and walking and standing for eight hours each day. [*Compare* R79, 611-12 *with* R251].  Thus, the ALJ's conclusion that Plaintiff was capable of performing the work of a call-center supervisor as she had previously performed it is not supported by substantial evidence.

Be that as it may, the Court discerns no reversible error in the ALJ's finding that Plaintiff is capable of performing her past work as a call-center supervisor at the sedentary level.  The claimant bears the burden of proving she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy. *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986); *Dudley v. Apfel*, 75 F. Supp. 2d 1381 1382 (N.D. Ga. 1999) (Thrash, J.); SSR 82-61.  Aside from her argument that the RFC finding is not supported by substantial evidence, a contention the Court rejected above, *see supra* Part VII.A., Plaintiff does not challenge the ALJ's determination that she could perform the work of a call-center supervisor as it is generally performed, [*see* Doc. 10 at 6-11; *see also* R75, 79 (VE testimony that the call-center supervisor position is sedentary and that an individual of Plaintiff's age, education, work experience, and RFC could perform the work of a call-center supervisor as it is customarily performed)].  Consequently, Plaintiff has waived any

AO 72A
(Rev.8/8
2)

such argument. *See Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (holding that a claim was waived where its proponent did not supply an argument or provide a citation to authority about the claim); *Jones v. Comm'r of Soc. Sec.*, 181 Fed. Appx. 767, 770 (11th Cir. May 12, 2006) (holding that only the arguments asserted before the district court were preserved for appeal) (citing *Jones*, 190 F.3d at 1228).

For these reasons, the Court finds that Plaintiff has not carried her burden of showing that the call-center work is not "past relevant work" for the purposes of the disability analysis. As Plaintiff has therefore failed to show that the ALJ erred at step four by finding that Plaintiff was capable of performing her past work, the Court finds that the decision of the Commissioner is due to be affirmed.[15]

---

[15]    Were it necessary to reach Plaintiff's allegation that the ALJ erred when analyzing the transferability of her skills, [Doc. 10 at 11-17], the Court would also affirm the decision of the Commissioner, as review of the record shows that the ALJ did rely on VE testimony that Plaintiff would have acquired customer service skills, supervisory skills, computer skills, and sales skills from her past work, [R616-17]; that even if the call-center supervisor job were not considered, Plaintiff's other past relevant work provided her with transferrable customer-service and sales skills, which would allow her to work as a telephone solicitor or a customer-service representative, [R617-19]; and Plaintiff's testimony and work history indicate that she had prior sales experience, [R46-47, 581-83 (Plaintiff's testimony that she was a sales associate for Time Warner Cable from 2009 to 2011 and her responsibilities included taking orders, receiving returned equipment from customers, and stocking equipment); R246, 298 (work history report and work background report describing the Time Warner job as

## VIII. CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner. The Clerk is **DIRECTED** to enter final judgment in the Commissioner's favor.

**IT IS SO ORDERED and DIRECTED**, this the 24th day of August, 2018.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

---

"sales"); R398 (job-description document from Time Warner Cable indicating that the essential job functions of a retail sales associate included selling products and providing information about the products and services using "persuasive communication skills"); R50-51, 585-86 (Plaintiff's testimony that she worked at Wyland Worldwide from 2000 to 2004 and that her primary duties were "customer service" and "sales"; that she worked art gallery shows and was responsible for delivering art to collectors, purchasing, and working with the artist and manufacturers; that she also entered orders, set up meetings between customers and artists, handled payments, and worked with distributors to ensure shipments were loaded properly); R249 (work history report indicating that the Wyland Worldwide job involved sales and customer service)]. Thus, substantial evidence supports the ALJ's determination that Plaintiff had transferrable supervisory, customer service, and sales skills, and that the skills were transferrable to other jobs Plaintiff could perform.

AO 72A
(Rev.8/8
2)